# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **FRANKLYN WILLIAMS,** | ) |
| | ) |
| PLAINTIFF, | ) CASE NO. 3:19-CV-00599 |
| | ) |
| V. | ) |
| | ) |
| | ) **JUDGE RICHARDSON** |
| **PRISONER TRANSPORTATION** | ) |
| **SERVICES, LLC,** *et al.* | ) **MAGISTRATE JUDGE HOLMES** |
| | ) |
| DEFENDANTS. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CUYAHOGA COUNTY'S MOTION TO SET ASIDE ENTRY OF DEFAULT

Defendant Cuyahoga County ("County") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 55(c) for an order setting aside the Clerk of Court's entry of default. For the following reasons, the Court should grant the County's Motion.

### BACKGROUND

Plaintiff Franklyn Williams is a prisoner in the Southern Ohio Correctional Facility and is serving a prison term of twenty-one years for committing multiple felony offenses (robbery, theft, misuse of credit cards, aggravated robbery, kidnapping, etc.). See Exhibit A (O.D.R.C. Offender Details.)[1] He previously lived in Cleveland, Ohio. See Compl. ¶1.

In 2018, Brevard Extraditions, LLC, d.b.a. U.S. Prisoner Transport, transported Plaintiff from Omaha, Nebraska to Cleveland, Ohio where he was placed into the custody of the Cuyahoga

---

[1] "Offender Details" for convicted prisoners are located on the Ohio Department of Rehabilitation and Correction's website. Plaintiff's information is located at the following address: https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A680538 (last visited May 6, 2020).

1

County Corrections Center ("County Jail"). Plaintiff claims that between July 15 and July 20, 2018, USPT subjected him "to extreme and inhumane conditions that violated all standards of decency." Compl. ¶14. Plaintiff further alleges that Mr. Williams's inhumane treatment was caused by USPT's policy of maximizing its profits at the expense of transferees' welfare. Compl. ¶¶ 15, 32-45, 57-58.

When Plaintiff arrived at the County Jail, he was asked a series of pre-classification questions during intake. See Exhibit B (Decl. O'Donnell). Plaintiff did not complain of any injuries nor did he appear to have any injuries when he was transferred into the custody of the County Jail. In fact, he denied ever being the victim of an assault or attempted assault. Id.

Plaintiff brings claims against Prisoner Transportation Services, LLC; Prisoner Transportation Services of America, LLC; and Brevard Extraditions, LLC (d.b.a. U.S. Prisoner Transport, Inc.) (collectively the "PTS Defendants") for alleged tortious conduct and violations of his constitutional rights. See generally Compl. Plaintiff further claims that the County was negligent in hiring and supervising the PTS Defendants and that it violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. Id. But Plaintiff fails to identify a custom or policy of the County that purportedly resulted in his constitutional rights being violated. Id. Plaintiff merely claims the County was aware that the PTS Defendants had a history of violating inmates rights, which is denied, but still contracted with them to transport Plaintiff. Id. at ¶¶47-48.

On October 9, 2019, Plaintiff's process server delivered a copy of the summons and Complaint to a special assistant who works in the County Administration building. See Doc. #34-1. The special assistant, Laura Trotter, is not an "authorized agent" of the County, nor does she hold herself out to be one. See Exhibit C (Decl. Trotter). The County Prosecutor's Office, which

2

represents the County and its officials and employees in litigation, has no record of receiving service of process.

On March 24, 2020, Plaintiff filed a Motion for Entry of Default against the County. Plaintiff did not serve a copy of this motion on the County. Plaintiff's Counsel did, however, submit a public records request to the County on March 17, 2020. See Exhibit D (Plaintiff's Records Request). The County, through its law department, responded on March 24, 2020. See Exhibit E (County's Response to Records Request). Plaintiff's counsel did not indicate in his correspondence with the law department that he had filed a lawsuit against the County or planned to file for an entry of default. Id.

On April 8, 2020, the Clerk of Court entered a default pursuant to Fed. R. Civ. P. 55(a). See Doc. #35 (Order Granting Default). On April 13, 2020, the County received notice of the entry of default. But due to the COVID-19 pandemic, closure of several County offices, and furloughs the default notice did not reach the County Prosecutor until April 22, 2020. Since then, the County retained local counsel and prepared an application to appear *pro hac vice* and motion to aside the default.

## LEGAL ANALYSIS

In considering whether to set aside a defendant's default, "the federal courts have a strong preference for trials on the merits." Clark v. Johnston, 413 F.App'x 804, 819 (6th Cir.2011), quoting Shepard Claims Serv. v. William Darrah & Assocs., 796 F.2d 190, 193 (6th Cir. 1986). Moreover, there is an important distinction between an entry of default and a default judgment. United States v. Real Property & All Furnishings Known as Bridwell's Grocery & Video, 195 F.3d 819, 820 (6th Cir. 1999) (hereinafter *"Real Property"*). That is, a stricter standard of review applies for setting aside a default once it has ripened into a judgment. Id. Motions to set aside default

3

entries, as opposed to default judgments, are to be granted more liberally. Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 208 (6th Cir. 1995). Under Federal Rule of Civil Procedure 55(c), a court may set aside default judgment for "good cause shown."

This Court has considerable latitude under the "good cause shown" standard of Rule 55(c) to grant a defendant relief from entry of default. Real Property, 195 F.3d at 820. In deciding whether "good cause" exists for purposes of granting a motion under Rule 55(c), a district court properly considers three factors: (1) "[w]hether the plaintiff will be prejudiced"; (2) "[w]hether the defendant has a meritorious defense"; and (3) "[w]hether culpable conduct of the defendant led to the default." Id. at 192.

A district court abuses its discretion in denying a motion to set aside an entry of default when the defendant establishes it has meritorious defenses and no prejudice will result to the plaintiff if the matter goes forward. O.J. Distributing, Inc. v. Hornell Brewing Company, Inc., 340 F.3d 345, 353 (6th Cir. 2003); See also Berthelsen v. Kane, 907 F.2d 617, 622 (6th Cir.1990) (reversing entry of default where, notwithstanding defendant's culpability in evading service, plaintiff failed to demonstrate that he will be prejudiced by the reopening of this case, and defendant had shown that he had a meritorious defense to the suit); Shepard Claims, 796 F.2d at 193-194 (6th Cir. 1986) (holding that while all three factors must be considered in ruling on a motion to set aside entry of default, when the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55( c) motion in the absence of a willful failure of the moving party to appear and plead).

Here, the County's request to set aside the Clerk of Court's entry of default should be granted because the County has meritorious defenses, the existing parties will suffer no prejudice, and the County's conduct was not willful.

**I.      THE COUNTY HAS MERITORIOUS DEFENSES TO PLAINTIFF'S CLAIMS.**

The County did not actively participate in any of the alleged conduct that resulted in Plaintiff's injuries. Instead, Plaintiff claims that the County should be liable for civil rights violations and tortious conduct purportedly caused by the PTS Defendants' employees because the County hired them to extradite Plaintiff from Omaha, Nebraska to Cleveland, Ohio. Specifically, Plaintiff claims the County violated his Fourteenth and Eighth Amendment Rights under the U.S. Constitution because it was deliberately indifferent to him and engaged in cruel and unusual punishment by hiring the PTS Defendants. Plaintiff also asserts a negligent hiring and supervision claim. The County has meritorious defenses to these claims.

**A.      This Court lacks personal jurisdiction over the County.**

The County intends to file a motion addressing whether this Court has personal jurisdiction over the County. When jurisdiction is based on a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir.2002), quoting Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992). Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Air Prods. & Controls, Inc. v. Safetech Internatl., Inc., 503 F.3d 544, 549-550 (6th Cir.2007), quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940). "When the issue of personal jurisdiction arises, due process obligates the courts to ascertain whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the

action." Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 646 (Tenn. 2009). The burden of establishing jurisdiction is on the plaintiff. Weller v. Cromwell Oil Company, 504 F.2d 927 (6th Cir. 1974).

In Natl. Pub. Auction Co., LLC v. Anderson Motor Sports, LLC, M.D.Tenn. No. 3:10-00509, 2011 U.S. Dist. LEXIS 10914, at *8-9 (Jan. 31, 2011), this Court held that the following factors should be analyzed in determining whether minimum contacts exist between the forum state and an out-of-state entity:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Whether an entity "purposefully availed [itself] of the privilege" of acting in Tennessee, "the defendant's conduct and connection with the forum state" are such that it should reasonably anticipate being "hauled into court there." Natl. Pub. Auction Co., LLC at *9, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); see Burger King Corp v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Here, Plaintiff cannot establish sufficient minimum contacts between the County and Tennessee. The County is a political subdivision in the State of Ohio. By contracting to have an inmate extradited from one state (and not even the forum state) to Ohio, the County did not purposefully avail itself of the privilege of acting in Tennessee. In fact, none of the alleged actions of the County or the PTS Defendants occurred in Tennessee. Plaintiff admits that his alleged injuries occurred somewhere between Nebraska and Ohio. Moreover, Plaintiff does not allege (nor can he prove) that the County has substantial enough connection with Tennessee to make the exercise of jurisdiction over the County reasonable. And it is worth noting that Plaintiff is not even

6

a resident of Tennessee - he resides in a prison cell in Lucasville, Ohio (i.e., the Southern Ohio Correctional Facility). See Exhibit A. Before that he lived in Cleveland, Ohio. See Compl. ¶1. Based on the above, there is no reasonable basis for haling the County into Tennessee to defend against this lawsuit.

### B. Plaintiff Cannot bring claims against the County under the Eighth Amendment.

Plaintiff claims the County and the PTS Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff admits he is a pretrial detainee. See Compl. ¶39. As a pretrial detainee, Plaintiff cannot pursue claims under the Eighth Amendment. See Barber v. Salem, 953 F.2d 232, 235 (6th Cir.1992). Therefore, Plaintiff's claims under the Eighth Amendment are meritless.

### C. Plaintiff cannot demonstrate that a custom or policy of the County was the moving force behind the alleged violations of his Fourteenth Amendment rights.

Plaintiff fails to point to a single custom or policy of the County that was the moving force behind the alleged constitutional deprivation. "[T]o impose §1983 liability on a political subdivision, a plaintiff must prove that the constitutional deprivation occurred as a result of an official custom or policy of the municipality." Smith v. City of Troy, Ohio, 874 F.3d 938, 946 (6th Cir. 2017) (internal citation omitted). The "custom or policy must be the 'moving force' behind the constitutional violation"; the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Amerson v. Waterford Twp., 562 F. App'x 484, 490 (6th Cir. 2014) (internal quotations omitted). Furthermore, a plaintiff's alleged injuries must have been caused by the political subdivision "through its *deliberate* conduct." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 399, 117 S. Ct. 1382 (1997) (emphasis in original).

7

Plaintiff cannot establish a policy or custom by merely showing that the County hired the PTS Defendants and that one of its employees allegedly violated Plaintiff's rights. Plaintiff's Complaint is unclear, but he appears to premise his *Monell* claim on the County's alleged failure to establish policies for the PTS Defendants to follow and/or failed to train the PTS Defendants. But the PTS Defendants are independent contractors, which means the County does not control, monitor, supervise, train, or establish policies for the PTS Defendants or their employees. And if the alleged mistreatment even occurred, it would have occurred while Plaintiff was in the custody of the PTS Defendants.

Furthermore, the County had no reason to believe that the PTS Defendants' policies and training of its employees was inadequate. Plaintiff cites two alleged investigations into the prison transportation industry as a whole and ten lawsuits filed against one or more of the PTS Defendants between 2014 and 2018 to suggest the County was aware of some alleged deficiency in the PTS Defendants' policies and training. See Compl. ¶46. The mere fact that the PTS Defendants may have been sued previously for alleged mistreatment of inmates is inconsequential. Especially considering that PTS of America claims it is the "nation's largest prisoner extradition company and one of the largest national transporters of detainees." See *https://prisonertransport.net/index.html* (last visited May 4, 2020.); see, e.g. Compl. ¶46. Given the large number of prisoners the PTS Defendants transport annually, it is unsurprising that they are subjected to the occasional scrutiny and lawsuits. This alone would not give pause to the County or any other public or private entity in need of extradition services.

In addition, Plaintiff must still prove that the PTS Defendants engaged in the alleged misconduct that led to Plaintiff's injuries. The PTS Defendants clearly deny the allegations in the Complaint. Therefore, holding the County in default at this stage is tantamount to saying Plaintiff

8

can recover regardless of whether the underlying abuse and mistreatment even occurred. Should the PTS Defendants prevail, a default against the County would lead to inconsistent verdicts and incongruous and unfair results. See In re First T.D. & Investment, Inc., 253 F.3d 520, 532 (9th Cir.2001); see also Gulf Coast Fans, Inc. v. Midwest Elec. Importers, Inc., 740 F.2d 1499, 1512 (11th Cir.1984); Frow v. De La Vega, 82 U.S. 552, 21 L.Ed. 60, 61 (1872). Accordingly, the Court should set aside the entry of default and allow the County to appear and defend against Plaintiff's claims pursuant to 42 U.S.C. 1983.

   **D. The County has meritorious defenses to Plaintiff's Negligent Hiring and Supervision claim.**

Plaintiff's negligent supervision and hiring claim against the County is contingent upon the PTS Defendants, through their employees, causing Plaintiff's alleged injuries. If Plaintiff cannot prove his claims against the PTS Defendants, then Plaintiff has no cause of action against the County. So, to the extent the PTS Defendants have meritorious defenses, the County does as well. And as demonstrated in the PTS Defendants' motions to dismiss (Doc. ## 15, 16, 24, 25, and 26), it appears the PTS Defendants have meritorious defenses.

Furthermore, the County agrees with the PTS Defendants' "choice of law" analysis in its Motion to Dismiss and that Ohio law controls concerning Plaintiff's tort claims. See Doc. #16, Motion to Dismiss, pp. 19-21). Under Ohio law, an employer "is not liable for the acts of an independent contractor." Strayer v. Lindeman, 68 Ohio St. 2d 32, 34, 427 N.E.2d 781 (1981). There are exceptions to this general rule. For example, an employer may be held liable for injuries resulting from its own negligence in selecting or retaining an independent contractor. Rodic v. Koba, 8th Dist. Cuyahoga NO. 77599, 2000 Ohio App. LEXIS 5715, at *6 (Dec. 7, 2000). "The primary issue in a negligent hiring case is whether the employer knew or should have known of the employee's … tortious propensities." Thus, the relevant inquiry is "whether facts existed that

9

Case 3:19-cv-00599  Document 41  Filed 05/08/20  Page 9 of 13 PageID #: 201

the employer should have known about, which facts would have prevented the employment relationship." Rodic at *14.

As noted above, Plaintiff erroneously concludes that the County was aware of the PTS Defendants' "tortious propensities" based on a handful of lawsuits and a few investigations into the entire prison transportation industry. Simply being the target of litigation or investigations would not, standing alone, put the County on notice that the PTS Defendants would cause injury to Plaintiff. And the fact that the PTS Defendants likely provide transport services to many government entities and private jails or prisons would indicate that any alleged misconduct by the PTS Defendants is an aberration. Accordingly, the County has meritorious defenses to Plaintiff's negligent hiring and supervision claim.[2]

## II. NONE OF THE PARTIES WILL BE PREJUDICED IF DEFAULT IS SET ASIDE.

Plaintiff cannot establish prejudice significant enough to warrant denial of this motion. To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. See Berthelsen, 907 F.2d at 621, citing INVST Financial Group, Inc. v. Chern-Nuclear Systems, Inc., 815 F.2d 391, 398 (6th Cir. 1987). The plaintiff cannot possibly show how any of the above forms of prejudice will result if default is set aside.

From the docket, it does not appear that anything of substance occurred during the alleged delay in filing an answer. Additionally, trial is not scheduled until December 7, 2021 and the current discovery deadline is December 15, 2020. (Doc. #21 and #22). Therefore, setting aside the entry of default will not require this Court to extend any deadlines established in this case.

---

[2] The County may also have immunity under Ohio Revised Code §2744.01, et seq. as to Plaintiff's negligent hiring and supervision claim.

Furthermore, Plaintiff's counsel made several public records requests and received documents related to this case. See Exhibit D; Exhibit E. Of course, Plaintiff's counsel never mentioned the pending lawsuit and motion for default despite having the opportunity to do so when communicating with representatives from the County's law department. Id. Nevertheless, Plaintiff can hardly claim prejudice when he has had the ability to obtain documents from the County via Ohio's public records laws. Accordingly, Plaintiff will not be prejudiced if the entry of default is set aside.

**III.    THE COUNTY'S CONDUCT WAS NOT WILLFUL.**

The County's failure to file a timely answer was not willful or culpable. In Shepard Claims, 796 F.2d at 194 (6th Cir. 1986), the Sixth Circuit held that, to be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings. Even if defense counsel's conduct is "careless and inexcusable," the Sixth Circuit has set aside default because "excusable conduct" is not the standard. Instead, "good cause" is the appropriate standard under Rule 55(c). Id. at 194.

Here, Plaintiff attempted service on the County by having a process server deliver a copy of the summons and complaint to an administrative assistant at the County. The process server signed an affidavit erroneously representing that Laura Trotter – a special assistant who works at the County's Administration Building – was the "authorized agent" for the County.[3] This is incorrect. Nowhere in the Federal Rules of Civil Procedure or the Ohio Rules of Procedure is a special assistant, administrative assistant, or assistant of any kind deemed an "authorized agent" for a local governmental entity. See Fed. Civ. Rule 4(j)(1) and (2); Ohio Civ. Rule 4.2(L) (service

---

[3] *N.B.* The County does not contend that Plaintiff's process server misrepresented the fact that he served Ms. Trotter with a copy of the summons and Complaint. Instead, the County maintains that the process server misrepresented, in the service affidavit, that Ms. Trotter was the County's "authorized agent."

11

on a County may be perfected by serving the "prosecuting attorney of the county."). Instead, the process server should have delivered service of process to the County "chief executive officer" or served the County Prosecutor. Id. This never occurred. Had Plaintiff's process server delivered service as required under the rules, the County would have received proper notice of the lawsuit and responded to Plaintiff's Complaint.

In addition, Plaintiff's counsel never served a copy of the default motion on the County. This is required under Fed. Civ. Rule 5. Although the certificate of service states that service was made via electronic filing and by U.S. Mail on "other parties," the County has no record of receiving Plaintiff's motion for default. And given that Plaintiff's counsel was communicating with the County's Law Department on March 24, 2020 – the same day he filed his motion for entry of default – a copy of the motion could have been given to someone in the Law Department.

Although the County should have responded to Plaintiff's Complaint and contested service, the lawsuit was never delivered to the County Prosecutor's Office.[4] As such, the County's failure to respond to the Complaint was not done with reckless disregard for the impact that its action might have on the proceedings or to thwart the judicial proceedings in this case.

## CONCLUSION

For the above reasons, the Court should grant the County's Motion to set aside the entry of default. There is good cause for setting aside the entry of default because none of the parties will be prejudiced, the County has meritorious defenses, and the actions of the County were not willful.

---

[4] Under Ohio law, the civil division of the Prosecutor's office represents the County in litigation.

12

Respectfully submitted,

*/s/ Leslie Curry Bay*_____
LESLIE CURRY BAY (019812)
2000 Richard Jones Road, Suite 250
Nashville, TN 37215
Phone: (615) 383-9495 /Fax: (615) 292-9848
leslie@currybaylaw.com

BRENDAN D. HEALY (0081225)
Assistant Prosecuting Attorney, Cuyahoga County
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
Phone: (216) 698-6447/Fax: (216) 443-7602
bhealy@prosecutor.cuyahogacounty.us
(Pending admission *pro hac vice*)

*Attorneys for Defendant Cuyahoga County*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Memorandum of Law in Support of Defendant Cuyahoga County's Motion to Set Aside Entry of Default" was filed electronically on this 8th day of May 2020. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Courts electronic filing system.

Daniel W. Olivis, Esq.
George S. Scoville, III, Esq.
LEWIS, THOMASON, KING, KRIEG & WALDROP
424 Church Street, Suite 2500 P.O. Box 198615
Nashville, Tennessee 37219-8615
*Attorneys for Prisoner Transportation Services, LLC,*
*Prisoner Transportation Services of America, LLC,*
*Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport*

Troy L. Bowlin, II, Esq.
The Bowlin Law Firm, P.C.
400 W. 1st North Street
Morristown, TN 37814-4617
*Attorney for Plaintiff*

Lee L. Piovarcy
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN 38119
*Attorney for Defendant Brevard Extradition, LLC d/b/a U.S. Prisoner Transport*

*/s/ Leslie Curry Bay*_____
Leslie Curry Bay

13