IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FRANKLYN WILLIAMS,         )
                          )
      Plaintiff,         )
                          )      NO. 3:19-cv-00599
v.                        )      JUDGE RICHARDSON
                          )
PRISONER TRANSPORTATION    )
SERVICES, LLC, et al.,        )
                          )
      Defendants.     )

## **<u>MEMORANDUM OPINION</u>**

Pending before the Court are Defendant Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport's Partial Motion to Dismiss (Doc. No. 15) and Defendants Prisoner Transportation Services, LLC and Prisoner Transportation Services of America, LLC's Joint Partial Motion to Dismiss (Doc. No. 24) (together, "Motions"). Plaintiff has filed a response to the Motions (Doc. No. 30), and Defendant Brevard Extraditions has filed a Reply (Doc. No. 31).

## **<u>BACKGROUND</u>** [1]

This case arises from the five-day transport of Plaintiff by Defendants from Omaha, Nebraska, to Cleveland, Ohio, in July 2018. During that transport, Plaintiff was an inmate in the custody of Defendants and, at the time of filing this action, Plaintiff was in the custody of the Cuyahoga County Jail in Cleveland, Ohio.

---

[1] The facts asserted in this section are taken from the Complaint (Doc. No. 1) and must be accepted as true for purposes of the pending motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants Prisoner Transportation Services of America, LLC; Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport; and Prisoner Transportation Services, LLC will be referred to herein as "the PTS Defendants."[2] The only other remaining Defendant[3] is Cuyahoga County, Ohio, which contracted with the PTS Defendants for the provision of extradition and prisoner transport services traditionally provided by local law enforcement.

Plaintiff asserts that the PTS Defendants violated his constitutional rights under the Fourteenth Amendment through cruel and unusual punishment, including deplorable and inhumane conditions of transport,[4] inadequate medical care, and the use of excessive force. He contends that the PTS Defendants' policies and practices encourage this mistreatment of prisoners because they "prioritize maximizing profits by transporting as many detainees as possible, with as few stops for rest or care possible, over [their] obligation to safely transport those in [their] custody." (Doc. No. 1 at ¶ 15). Plaintiff alleges that the PTS Defendants fail to appropriately screen, train, and/or supervise their drivers and employees to ensure that such abuses of detainees do not occur. (*Id.* at ¶ 44). "In fact, the PTS Defendants' policies and practices engender a culture that encourages such conduct." (*Id.*).

---

[2] The Complaint asserts that control, management, functions, and activities of these three companies are consolidated, with Prisoner Transportation Services, LLC owning and having complete operating control over the other two companies.

[3] All federal claims against the individual Defendant, Guerra, were dismissed by the Court on February 3, 2020, based upon the fact that Plaintiff sued him in his official capacity only and, therefore, the Court construed the claim as being brought instead against the "governmental entity" (in this case, the PTS Defendants). (Doc. No. 32). Having dismissed those federal claims, the Court declined to exercise supplemental jurisdiction over Plaintiff's state-law claims against Guerra. (*Id.*).

[4] "Defendants subjected Mr. Williams to extreme and inhumane conditions that violated all standards of decency." (Doc. No. 1 at ¶ 14).

Plaintiff also alleges that the PTS Defendants are liable on state-law claims of assault and battery, intentional infliction of emotional distress, vicarious liability for the wrongful acts of their employees, negligence, gross negligence, and negligent supervision and hiring. The PTS Defendants have moved to dismiss some of Plaintiff's claims for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## MOTION TO DISMISS STANDARD

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may

be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## FEDERAL CONSTITUTIONAL CLAIMS

In response to the pending motions, Plaintiff has conceded that his constitutional claims are based upon the Fourteenth Amendment only, not the Fourth or Eighth Amendment.[5] (Doc. No.

---

[5] Under the Fourteenth Amendment, pretrial detainees are entitled to the same Eighth Amendment rights as other inmates. *Duckett v. Cumberland Cty. Sheriff Dep't*, No. 2:18-cv-00024, 2020 WL 4722429, at *3 (M.D. Tenn. July 17, 2020). Thus, although Plaintiff has no Eighth Amendment protection, he does have Fourteenth Amendment protection that encompasses the substance of Eighth Amendment protections, and therefore cases discussing Eighth Amendment protection are applicable to Plaintiff's Fourteenth Amendment claims.

30 at 2). Moreover, Plaintiff concedes that the PTS Defendants cannot be held liable for constitutional violations based upon a *respondeat superior* theory. (*Id.* at 3). Plaintiff alleges that the PTS Defendants violated the Fourteenth Amendment through (1) their use of excessive force, (2) their failure to provide adequate medical care, and (3) their imposition of the conditions of confinement to which Plaintiff was subjected. He contends that the PTS Defendants are liable for their own constitutional violations and their practices, policies, and customs that were the moving force behind Guerra's actions. (Doc. No. 30 at 3).

A private party may enforce his federal constitutional rights against "anyone who subjects [him] to the deprivation of any rights or privileges secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012); 42 U.S.C. § 1983. A person suing under this statute must demonstrate the denial of a constitutional right caused by a defendant "acting under color of state law." *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014); *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 903 (W.D. Tenn. 2016). Because they performed a traditional state function in transporting state prisoners, the PTS Defendants were acting under the color of state law for purposes of the events alleged in the Complaint.[6] *See Vick v. CoreCivic*, 329 F. Supp. 3d 426, 445 (M.D. Tenn. 2018) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996)).

The Sixth Circuit applies the standards for assessing municipal liability to claims against private corporations that operate prisons (or, as here, transport prisoners). *Bumpus v. Howard*, No. 3:19-cv-01081, 2020 WL 4431463, at *4 (M.D. Tenn. July 30, 2020). A municipality (and therefore the PTS Defendants) can be liable under Section 1983 only if the plaintiff establishes

---

[6] Defendants do not dispute that they are "persons" within the meaning of Section 1983. (Doc. No. 16 at 5).

that (1) the plaintiff's harm was caused by a constitutional violation; and (2) the municipality was responsible for that violation. *Roath v. Lee*, No. 3:17-cv-00995, 2019 WL 3066533, at *15 (M.D. Tenn. July 12, 2019) (citing *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009)). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Id.* (citing *Spears*, 589 F.3d at 256). That is to say, the PTS Defendants may be liable under § 1983 only if their official policies or customs caused a constitutional injury to Plaintiff. *Vick,* 329 F. Supp. 3d at 445; *Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) ("a private corporation may be liable under § 1983 when the corporation's official policy or custom causes the alleged deprivation of a federal right").

Like every other § 1983 "person," local governments (and, as here, private corporations), may be sued for constitutional deprivations visited pursuant to governmental "custom," even though such a custom has not received formal approval through the body's official decision-making channels. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (sheriff's failure to supervise and correct the situation [instances of abuse of paraplegic or physically infirm inmates] in view of the numerous similar incidents and his failure subsequently to punish the responsible individuals found to be "more than sufficient evidence" of a policy or custom to render county liable for the plaintiff's damages).[7]

_____

[7] Liability against a municipality is available under multiple theories, including an express municipal policy; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; a failure to act where the inadequacy of the existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been

Liability for constitutional violations attaches only if the defendants' policies are shown to be the "moving force" behind the plaintiff's injury. *Vick*, 329 F. Supp. 3d at 445 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). As to each alleged constitutional violation, therefore, the Court must look at whether Plaintiff has sufficiently alleged a constitutional violation and, if so, whether he has sufficiently alleged that the moving force behind his alleged injury was a policy or practice of the PTS Defendants.

A. Policies and Practices

The Complaint includes 15 paragraphs describing the PTS Defendants' alleged policies and practices that were allegedly the "moving force" behind Plaintiff's injuries. (Doc. No. 1, ¶¶ 32-46). Plaintiff contends that the PTS Defendants have represented to state and local governments that their services cost a fraction of what it would cost the governments to transport their own prisoners. Plaintiff also contends that the PTS Defendants have implemented a business model that places their "bottom line" above all else, resulting in grossly unsafe and unsanitary conditions on board PTS transport vehicles.

Plaintiff alleges that the PTS Defendants maximize their potential earnings through various policies and practices that result in constitutional violations—for example: (1) scheduling drivers to do as many pickups as are requested, without regard for the crowdedness of the vehicles or the long, circuitous routes required in order to pick up additional prisoners; (2) rotating drivers during any given transport so that the vehicles do not have to stop to allow drivers to rest; (3) using vehicles outfitted only with steel interior cages and metal benches, where guards cram detainees

---

deliberately indifferent to the plaintiff's rights; and a ratification of a municipal employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct. *Miller v. City of Shaker Heights, Ohio*, 438 F. Supp. 3d 829, 836 (N.D. Ohio 2020) (citations omitted).

shoulder-to-shoulder, sometimes exceeding the maximum capacity of the vehicles; (4) using vehicles with no seat belts and no toilets; (5) not providing for restroom breaks, so as to maximize the amount of time on the road; (6) not providing regular cleaning of the vehicles; (7) not stopping to allow prisoners to shower, brush their teeth, change their clothes, or perform basic hygiene tasks, sometimes for weeks; (8) requiring prisoners to sleep sitting up on the hard benches, essentially having them go days without adequate sleep; (9) failing to provide for regular checks or procedures to ensure overall conditions in the transport vehicle (ventilation, temperatures, cleanliness) are safe; (10) failing to provide prisoners with adequate food and water; (11) failing to provide for the medical needs of persons in their custody; (12) mocking, abusing, verbally and physically assaulting prisoners in the name of "keeping order"; (13) indiscriminately using pepper spray/mace to silence prisoners; and (14) failing to appropriately screen, train, and/or supervise their employees to ensure that such abuses do not occur, thus engendering a culture that encourages such conduct. (*Id.*)

Plaintiff alleges that because the PTS Defendants conduct their business in the manner that they do, "numerous people have been significantly injured, or in some cases have died, because they were assaulted and/or did not receive basic medical care while in PTS' custody." (Doc. No. 1 at ¶ 45). The Complaint then identifies 12 lawsuits, investigations and other complaints against the PTS Defendants regarding these alleged abuses and unsafe and inhumane conditions of transport. (*Id.* at ¶ 46).

B. Excessive Force

Although Count II of the Complaint, alleging the use of excessive force, was brought against only the individual Defendant (Guerra) (Doc. No. 1 at p. 20), it was brought against Guerra in his official capacity only. The Court dismissed the claim against Guerra because a claim brought

against him in his official capacity is treated as a claim against the PTS Defendants, and thus the Court will so treat it herein. (Doc. No. 32). In so doing, the Court observes that Count II—though not expressly brought against the PTS Defendants, as noted, suggests a legal basis for holding them liable when it alleges that Guerra's actions "occurred as a matter of regular procedure followed by employees of the PTS Defendants, with the company's knowledge and explicit or implicit encouragement" (Doc. No. 1 at ¶ 72).

Count II asserts that Guerra gratuitously pepper-sprayed Plaintiff and forced him to "sit in it" for two days, when Plaintiff was restrained and posed no threat to the PTS employees or the other passengers. Plaintiff has conceded that the PTS Defendants cannot be liable for Guerra's actions under a *respondeat superior* theory. (Doc. No. 30 at 3). Plaintiff argues, however, that the PTS Defendants nevertheless are liable because (according to paragraph 72 of the Complaint, as noted above), Guerra's actions occurred as a matter of regular company policy, with the company's knowledge and encouragement and because the PTS Defendants had an unofficial policy or custom of condoning the use of gratuitous violence in the name of "keeping order." (Doc. No. 30 at 3).

The PTS Defendants have not moved to dismiss the pepper-spray claim. They moved to dismiss Plaintiff's alleged claim that verbal abuse and pointing a taser at him constituted "excessive force." But nowhere in Count II regarding excessive force does Plaintiff assert that verbal abuse and pointing a taser are parts of his excessive force claim. (Doc. No. 1 at ¶¶ 68-76). Therefore, accepting the Complaint's allegations as true, the Court finds that Plaintiff has not

asserted verbal abuse[8] and pointing a taser as parts of his excessive force claim.[9] Accordingly, the PTS Defendants' Motion to Dismiss concerning the excessive force claim will be denied as moot, and the excessive force claim against the PTS Defendants for the use of pepper spray will remain.

C. Inadequate Medical Care

The government has a constitutional obligation to provide medical care for individuals it incarcerates, and deliberate indifference to the serious medical needs of an inmate constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the right to adequate medical treatment when he or she acts with "deliberate indifference" to a pretrial detainee's "serious medical needs." *Troutman v. Louisville Metro Dep't of Corr.*, No. 20-5290, 2020 WL 6336315, at *5 (6th Cir. Oct. 29, 2020).

The deliberate indifference standard at issue has both an objective component and a subjective component. *Id.* Under the subjective ("deliberate indifference") standard, an inmate must show both that an official knew of his serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably to that need. *Troutman,* 2020 WL 6336315, at *6. Under the objective standard, a pretrial detainee must show an objectively "sufficiently serious" medical need. *Id.* at *5 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In other words, the objective component requires a plaintiff to prove that the alleged deprivation of medical

---

[8] Plaintiff also admits that verbal abuse, standing alone, is insufficient to state a claim of excessive force. (Doc. No. 30 at 3).

[9] Plaintiff argues, in response to the Motions, that the alleged verbal abuse and pointing a taser are relevant to the overall excessive force analysis. Whether such evidence is relevant to any remaining issue will be determined, if necessary, at the summary judgment stage or at trial.

care was serious enough to violate the Constitution. *Griffith v. Franklin Cty.,* 975 F.3d 554, 567 (6th Cir. 2020). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). To show that the medical need was sufficiently serious, the plaintiff must show that the conditions of incarceration imposed a "substantial risk of serious harm." *Troutman*, 2020 WL 6336315 at *5. Seriousness is measured objectively, in response to "contemporary standards of decency." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).

Count I of the Complaint alleges cruel and unusual punishment through the conditions of confinement Plaintiff endured in the PTS Defendants' custody, including their failure to provide adequate medical care. Plaintiff contends that for two days after Guerra sprayed pepper spray in Plaintiff's face, he was forced to sit "on a hard bench inside a cage, his eyes, nose, and skin burning from the pepper spray that he could not wash off." (Doc. No. 1 at ¶ 27). When he tried to rest in the mid-July heat, "the pepper spray would 're-activate' and more acutely burn his face and eyes." (*Id.*) Plaintiff also asserts that, because of the tight restraints, his wrists and ankles were "painfully chaffed, swollen, and discolored." (*Id.* at ¶¶ 29, 31, and 54). Plaintiff alleges that he repeatedly asked for medical care and was denied. (*Id.* at 28). The PTS Defendants have moved to dismiss Plaintiff's inadequate medical care claim "to the extent that it is predicated on his swollen wrists or ankles or exposure to pepper spray." (Doc. No. 16 at 14-15).

The PTS Defendants argue that, even assuming Plaintiff meets the subjective (deliberate indifference) standard, Plaintiff has failed sufficiently to allege facts to satisfy the objective standard for his inadequate-medical-care claim. The PTS Defendants assert that swollen wrists and

ankles from prisoner restraints and stinging eyes from pepper spray are not sufficiently serious injuries, under this objective standard, to obligate them to provide adequate medical care. (Doc. No. 16 at 12). In *McDougald v. Erdos*, No. 1:17-cv-464, 2018 WL 2388400 (S.D. Ohio May 25, 2018), cited by Defendants, the court found that a plaintiff's alleged injury of swollen wrists and lacerations from handcuffs simply was not a "sufficiently serious" medical need that was diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Id.* at *5 (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)); *see also Brock v. Coonts*, No. 5:17CV-P183-TBR, 2018 WL 2024865, at *5 (W.D. Ky. May 1, 2018) ( plaintiff did not establish that he suffered serious medical need when he alleged only that wrists were swollen and not that he had incurred any ongoing problems or required additional medical treatment for his wrists).

Here, the record reflects no physician's diagnosis that the alleged wrist and ankle injuries required medical treatment. Plaintiff has not asserted that he required medical treatment for his wrists or ankles when he finally reached his destination in Ohio or that he has experienced any ongoing problems with his wrists and ankles beyond leaving the PTS Defendants' custody. So the question becomes whether the hypothetical lay person would easily recognize the alleged injuries as requiring medical treatment.

The Court, having some familiarity with the effects (or potential effects) of handcuffs on detainees,[10] certainly understands what Plaintiff is alleging and endeavors to assess whether such

---

[10] As is a matter of public record, the undersigned was, two decades ago, an FBI Special Agent, a position that requires considerable training, and real-world experience, regarding the proper use, application, and effects of handcuffs on detainees. The Court hastens to add, lest anyone fear that his experience with law enforcement biases him in favor of Defendants, that his more recent experience before taking the bench involved representing criminal defendants.

injuries would be thus recognizable by a lay person. Plaintiff describes injuries that may be uncomfortable (not to mention, as alleged, unnecessary and unwarranted). But that does not mean that a hypothetical lay observer would recognize them as requiring *medical treatment.* The reality is that medical treatment is by no means necessarily or generally required for the kind of injuries from handcuffs and ankle restraints alleged by Plaintiff. That being so, the Court cannot possibly find that a lay observer would conclude correctly—or indeed even conclude at all—that medical treatment was necessitated by such injuries. In the Court's view, although such an observer may be sympathetic to the detainee, the observer likely would conclude that medical treatment would be solely optional rather than necessary, and that the injuries could be resolved simply via time to heal from the effects of the restraints once they are taken off.

The Court therefore finds that Plaintiff's claim of wrist and ankle injuries do not sufficiently allege a serious medical need. Thus, these allegations are insufficient to render plausible the contention that there was a constitutional violation based on deliberate indifference as to the failure to provide medical care for the wrists and ankles.

Plaintiff asserts that his medical needs were made more serious because of the delay in medical treatment. (Doc. No. 30 at 5-6). The Sixth Circuit[11] has held that it is appropriate to examine the seriousness of a deprivation of medical care by examining the effect of the delay in treatment. *Napier v. Madison Cty., Ky,* 238 F.3d 739, 742 (6th Cir. 2001); *see also Delk v. Bumpas*, No. 1:19-cv-00081, 2020 WL 1557257, at *3 (M.D. Tenn. Apr. 1, 2020). In such cases, the court must examine the effect of the delay to ascertain whether the deprivation was sufficiently grave

---

[11] Plaintiff cited to Eleventh and Ninth Circuit cases for this proposition, but he need not look further than *Napier* to find that the Sixth Circuit recognizes this principle as well.

that it posed a substantial risk of serious harm. *Id.* (citing *Napier*, 238 F.3d at 742). Where the delay-of-treatment claim involves an injury that is not obvious, a plaintiff must submit verifying medical evidence showing the detrimental effect of the delay.[12] *Id.* (citing *Kimbrough v. Core Civic*, No. 1:19-cv-00048, 2019 WL 2501558, at *2 (M.D. Tenn. Jun 17, 2019));[13] *see also Napier*, 238 F.3d at 742, *cited in Barrera v. Newsome*, No. 20-1270, 2020 WL 5641106, at *3 (6th Cir. Sept. 14, 2020) (same).

The Court finds that Plaintiff has failed to sufficiently allege any such delay in medical treatment as to the wrist and ankle restraints violated his constitutional rights. Plaintiff does not assert what medical care exactly he claims was needed or that he asked for or received such medical care when he reached his destination.

Moreover, the Court finds that Plaintiff has not sufficiently alleged that the PTS Defendants violated his constitutional right to adequate medical care for any lingering effects of the pepper spray. Plaintiff's allegations may state a claim for denial of basic hygiene to remedy the effects of pepper spray, but Plaintiff makes no assertion as to what *medical care* he claims was needed to

---

[12] In *Delk*, the court found the plaintiff sufficiently alleged the unreasonableness of a 17-day delay in dental treatment for a jaw injury, and in *Kimbrough*, the court found the plaintiff sufficiently alleged the unreasonableness of a three-week delay in providing a cast for the plaintiff's broken bone.

[13] Both *Delk* and *Kimbrough* were decisions on initial review of a prisoner's complaint pursuant to the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. § 1915. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Singer v. Price*, No. 3:16-cv-02621, 2017 WL 413853, at *1 (M.D. Tenn. Jan. 31, 2017) (citing *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)); *see also Mills v. Davis*, No. 1:13-cv-57, 2014 WL 2893215, at *2 (E.D. Tenn. June 24, 2014) (court screens complaint pursuant to PLRA applying same standard as applied to motions to dismiss under Fed. R. Civ. P. 12(b)(6)).

address the pepper spray. Neither has he alleged that he asked for or was provided any medical care for the pepper spray effects at the time he was allowed to shower or once he reached his destination, and he has not provided verifying medical evidence concerning any detrimental effect of the delay in any medical treatment for the pepper-spray incident.

So Plaintiff would have to show that a lay observer would conclude that the injury from the pepper spray necessitated medical treatment. And the Court simply is unable to see how this showing possibly could be made. The reality is that medical treatment is by no means necessarily or generally required in the aftermath of a pepper spraying.[14] That being so, the Court cannot possibly find that a lay observer would conclude correctly—or indeed even conclude at all—that medical treatment was necessitated by the effects of the pepper spraying.

For these reasons, the Motions as to Plaintiff's claim of inadequate medical care will be granted, and that claim will be dismissed.

D. Conditions of Confinement

Count I of the Complaint alleges unconstitutional conditions of confinement in the following additional ways: depriving Plaintiff, for a course of four days, of necessities for basic hygiene; failure to provide sufficient food and water; forcing Plaintiff to spend days in conditions that did not allow for adequate sleep; and exposing Plaintiff to risks of injury and death because he was not provided with a seatbelt and the PTS drivers often drove recklessly and at dangerous

---

[14] The undersigned can say this with confidence based on his relevant experience from his tenure with law enforcement, during which he and numerous colleagues (in his presence) were sprayed in the face with pepper spray. The undersigned can say that he literally can feel Plaintiff's alleged pain from pepper spray and does not mean to minimize the great discomfort. But he can also say from his experience (and his observation of his colleagues) that over time, the effects of pepper spray generally go away by themselves, without need of medical treatment.

speeds. (Doc. No. 1 at ¶¶ 54-58). Plaintiff alleges that he was tightly and excessively restrained for 89 hours in the back of an unventilated, foul-smelling transport bus packed with other prisoners. (*Id.* at ¶ 14). He claims that he was allowed out of his "cage" very few times to stand up, sit down, or walk around. (*Id.*) He asserts that he was allowed to make only infrequent breaks to the onboard bathroom (which was in disrepair and unsanitary and shared with a passenger known to have a contagious staph infection), and he and many prisoners were forced to relieve themselves in their seats and sit in human waste and filth, enduring the overwhelming heat and stench aboard the bus. (*Id.* at ¶¶ 14, 19-31).

Plaintiff alleges that when he was finally able to have the restraints removed and permitted to shower, in Hamilton County, Indiana, he reported the "deplorable treatment and inhumane conditions" and the Hamilton County jail officials filed a report on his behalf, took pictures of his injuries, and placed him in their custody as a "keep safe" inmate. (Doc. No. 1 at ¶ 30). Plaintiff also asserts that, on July 20, at the insistence of the Hamilton County officials, he was placed on a different PTS transport van and taken directly to Cuyahoga County, Ohio. He claims he arrived in Ohio "traumatized and in pain." (*Id.* at ¶ 14).

The PTS Defendants have moved to dismiss Plaintiff's conditions-of-confinement claims for (1) refusal to provide a seatbelt; (2) rationing food and water; and (3) denial of access to shower or more hygienic conditions, claiming that these three things do not violate the Constitution. (Doc. No. 16).

The Constitution does not protect a prisoner from unpleasant prison experiences. *Bumpus*, 2020 WL 4431463, at *9. Nor does it mandate comfortable conditions of confinement. *Id.* However, the Constitution does impose an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care to guarantee prisoner

safety. *Id.* While incarceration conditions may be "restrictive and even harsh," they do not violate the Constitution unless they "deprive inmates of the minimal civilized measure of life's necessities." *Cox v. Gentry*, No. 3:19-cv-01047, 2019 WL 6608933, at *3 (M.D. Tenn. Dec. 5, 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment. *Id.* It necessarily follows, then, that a pre-trial detainee or prisoner has not been subjected to cruel and unusual punishment simply because he has been made to feel uncomfortable during the course of a transfer from one prison to another. *Nguyen v. Prisoner Transp. Servs.*, No. 3:18-cv-00871, 2019 WL 429678, at *5 (M.D. Tenn. Feb. 4, 2019); *see also Turner v. Prisoner Transp. Servs. of Am.*, No. 3:17-cv-01260, 2018 WL 1522403, at *3 (M.D. Tenn. Mar. 28, 2018).[15]

Plaintiff asserts that he has sufficiently alleged facts relating to the conditions aboard the bus that have the "mutually enforcing effect" of depriving him of adequate food, water, personal safety and hygiene. (Doc. No. 30). The Supreme Court has stated that some conditions of confinement may establish a constitutional violation "in combination" when each would not do so alone, but only when they have a "mutually enforcing effect" that produces the deprivation of a single, identifiable human need, such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. *August v. Michigan Dep't of Corr.,*

---

[15] Unlike this case, *Nguyen* and *Turner* were both brought by *pro se* plaintiffs. The court must construe a *pro se* complaint liberally and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *Nguyen*, 2019 WL 429678, at *1 (citations omitted). Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, the courts' duty to be less stringent with pro se complaints does not require them to conjure up unpleaded allegations. *Id.* (citation omitted); *see also Turner*, 2018 WL 1522403, at *1. And, these two cases against the PTS Defendants are nonetheless instructive as to the constitutional claims herein.

No. 2:16-cv-11224, 2018 WL 4679597, at *7 (E.D. Mich. Sept. 29, 2018) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).[16] No violation exists if each of the inmate's basic needs (food, clothing, shelter, sanitation, medical care, and personal safety) is separately met. *Id.* While it is appropriate to consider asserted deprivations individually and in combination, the court should also consider the interrelationship between the severe conditions and their duration, coupled with any other relevant evidence in the record. *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

In *Turner*, the plaintiffs alleged that they suffered more than mere discomfort while being transported from one location to another. *Turner,* 2018 WL 1522403 at *3. They alleged that PTS officers/drivers did not take sufficient breaks and drove recklessly and dangerously, creating unsafe conditions for the drivers and occupants and resulting in specific physical injuries to the plaintiffs following a near automobile accident and a journey of more than ten days. The plaintiffs contended that the defendants ignored the plaintiffs' request for hygiene breaks and medical attention for their injuries and ailments. The court found that, for purposes of the required PLRA screening,[17] the complaint stated colorable Eighth or Fourteenth Amendment claims. *Id.*

In *Nguyen,* the plaintiff also alleged that he suffered more than mere discomfort while being transported from New Jersey to California and back. *Nguyen*, 2019 WL 429678, at *5. He alleged that officers drove recklessly and dangerously on purpose, creating unsafe conditions for the occupants and resulting in specific physical injuries to him. He alleged that the conditions of

---

[16] The Supreme Court explained that nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson*, 501 U.S. at 304. The Sixth Circuit has refused to conduct a "totality of the circumstances" analysis in Eighth (or Fourteenth) Amendment cases. *August*, 2018 WL 4679597, at *7.

[17] Again, the Court notes the similar standards in its analysis for the PLRA and for a motion to dismiss. *Singer*, 2017 WL 413853, at *1.

confinement within the transport van were unsanitary and dangerous, as prisoners were forced to eliminate bodily waste on the floor, in bottles, and on themselves, because the officers would not take enough hygiene breaks; the van lacked adequate ventilation and air conditioning, resulting in extreme temperatures and causing the plaintiff to lose consciousness on several occasions; the prisoners rode in complete darkness and in restraints for long periods of time; and the prisoners were forced to experience sleep deprivation. According to the complaint, when the plaintiff and other prisoners complained, the officers ignored, threatened, or ridiculed them and subjected them to "rough ride assaults." For purposes of the required PLRA screening, the court found that these allegations stated colorable constitutional claims against PTS. *Id.*

### 1. Seatbelts

Plaintiff contends that the lack of seatbelts in the transport van, coupled with the PTS drivers' reckless driving, deprived him of his personal safety. Defendant, on the other hand, argues that refusing to provide a prisoner with a seatbelt does not violate the Constitution.

Transporting inmates without seatbelts does not alone amount to the deliberate indifference required to constitute cruel and unusual punishment. *Daily v. CCA-WCFA Whiteville Transp. Officers*, No. 3:18-cv-0146, 2018 WL 1583980, at *5 (M.D. Tenn. Apr. 2, 2018) (collecting cases). In *Daily*, the plaintiff alleged that the driver was driving at excessive speeds and was distracted by his cell phone, which resulted in his abruptly slowing the transport van to avoid hitting another vehicle, causing injuries to the plaintiff. *Id.* at *4. The court held that none of the plaintiff's allegations suggested that the driver was deliberately indifferent to the risk of serious harm to the plaintiff. *Id.* (noting that the deliberate indifference standard "describes a state of mind more blameworthy than negligence").

In *Turner*, the plaintiffs' complaint about the lack of seatbelts was coupled with the allegation that the transport van was involved in a near accident, when the driver (who was allegedly texting and speeding while driving through a construction zone) suddenly braked to avoid hitting another vehicle. *Turner*, 2018 WL 1522403, at *2. Similar to *Daily*, the plaintiffs contended that the sudden braking caused them to slam against one another and into a metal wall located at the rear compartment of the van, resulting in personal injuries to the plaintiffs. *Id.* The court found that the plaintiffs had stated colorable conditions-of-confinement claims against the PTS Defendants based upon these allegations and the additional allegations of unsanitary conditions and lack of medical attention. *Id.* at *3.

In *Young v. Dep't of Corr.*, No. 04-10309, 2007 WL 2214520 (E.D. Mich. July 27, 2007), the court, citing "the weight of authority from other circuits," found that "no Eighth Amendment violation occurs simply by transporting a prisoner unseatbelted in a prison vehicle." *Id.* at *6. To violate the Eighth Amendment, a prison official must know of and disregard an excessive risk to inmate health or safety. *Id.* (citing *Farmer,* 511 U.S. at 837). Refusing to seat belt a prisoner during transport and then exceeding the speed limit does not constitute an "excessive risk to inmate health or safety." *Id.*

In both *Daily* and *Turner*, the plaintiffs alleged personal injuries because of a motor vehicle accident (or near accident) while they were without seatbelts. Turner stated a claim and Daily did not. Here, Plaintiff has not alleged any specific injury from having no seatbelt or from the drivers' alleged reckless driving, other than a threat to his personal safety. As in *Daily*, the Court finds that this allegation alone is not sufficient to state a Fourteenth Amendment claim, and Defendants' Motions will be granted as to Count I to the extent based on mere lack of seatbelts and reckless driving.

2. <u>Inadequate Food and Water</u>

Plaintiff alleges that he was denied adequate food and water while in the PTS Defendants'
custody. He contends that he was offered only "infrequent dollar-menu meals" and "insufficient
water;" he became dehydrated; he was provided "cheap fast food;" and water was "severely
rationed." (Doc. No. 1 at ¶¶ 24, 31, 41, and 54). He asserts that the PTS Defendants allow their
drivers a food-and-beverage budget of only a few dollars for each prisoner each day. (*Id.* at ¶ 58).

The PTS Defendants analyze this part of Plaintiff's conditions of confinement claim as a
due process claim. But this claim is not brought pursuant to either the First or the Fifth
Amendment's Due Process Clause as are the cases Defendants cite. Plaintiff's condition of
confinement claim is based upon the Eighth Amendment's prohibitions on "cruel and unusual
punishment," as applied to Plaintiff, a pretrial detainee, through the Fourteenth Amendment.

The deprivation of a few meals for a limited time generally does not rise to the level of an
Eighth Amendment violation. *McGowan v. Beecher*, No. 1:20-cv-851, 2020 WL 6390203, at *8
(W.D. Mich. Nov. 2, 2020) (citing *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per
curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth
Amendment, because the meals provided contained sufficient nutrition to sustain normal health));
*compare Deas v. Ingham Cty. Jail*, No. 1:18-CV-838, 2018 WL 3853521, at *4 (W.D. Mich. Aug.
14, 2018) (finding allegations of unsafe, contaminated drinking water and weeks old food with
insufficient calories to be sufficient to state a claim). The withholding of meals, while it may result
in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to
qualify as a "wanton infliction of pain" where the prisoner continues to receive adequate nutrition.
*Richmond v. Settles,* 450 F. App'x 448, 456 (6th Cir. 2011). Here, Plaintiff has alleged no specifics
as to the amount of food he *did* receive over the course of the five-day journey, but it is clear that

he did receive some meals. Also, Plaintiff has not alleged any specific injury from the lack of food. The Court finds that the allegation of insufficient food is insufficient alone to state a Fourteenth Amendment claim.

Withholding water from inmates may certainly rise to the level of an Eighth Amendment violation. *Salada v. Putnam Cty. Sheriff's Dep't*, No. 2:16-cv-00032, 2017 WL 1461581, at *4 (M.D. Tenn. Mar. 21, 2017) (finding deprivation of water for three and a half hours insufficient to state a constitutional violation); *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (deprivation of water for twelve hours sufficient to state a claim); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001). In *Dellis*, the plaintiff alleged that he was deprived of drinking water for three days. He alleged that he was given only two half pints of milk and one sixteen and one-half ounce bottle of water during the entire three-day time period, and the court, accepting those allegations as true, found that he had pleaded facts which, if proven, would entitle him to relief. *Id.* at 512; *compare Tolson v. Washburn*, No. 3:19-cv-00175, 2020 WL 3546753, at *9 (M.D. Tenn. June 30, 2020) (finding that deprivation of food and water for one to two hours, without other extenuating circumstances, is "simply too short" to support an Eighth Amendment claim).

Here, Plaintiff alleges not only that he was provided "woefully insufficient" drinking water for a five-day trip, but also that the temperatures in the unventilated transport van were "sweltering" and he was dehydrated and in pain. These allegations, taken as true, which they must be for purposes of this analysis, are sufficient alone to allege a constitutional violation for deprivation of water. Moreover, the allegations in the Complaint concerning the PTS Defendants' practices and policies are sufficient, for purposes of the Motions, to allege that those policies were the "moving force" behind the lack of adequate drinking water in this case.

Therefore, Defendants' Motions will be granted as to Count I to the extent it is based on the lack of adequate food but denied to the extent it is based on the lack of adequate drinking water.

### 3. Lack of Basic Hygiene

The PTS Defendants argue that deprivation of basic hygiene for a brief span of time is not actionable conduct, citing *Richmond,* 450 F. App'x 448. In *Richmond*, the court found that the deprivation of a shower and other personal hygiene items for "only six days" was not actionable. *Id.* at 455.

Plaintiff argues that he did not suffer simply the temporary inconvenience of being denied a shower for four days. He alleges that he was denied the ability to wash off the pepper spray from his face and eyes and was forced to sit in human excrement and urine for four days. He contends that these allegations taken together assert "barbarous conditions" that "contravene society's evolving standards of decency," citing *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981).

Courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste. *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990), *cited in Burks v. Ohio Dep't of Rehab. & Correction*, No. 1:20-cv-93, 2020 WL 2319716, at *2 (S.D. Ohio May 11, 2020). In *Burks,* the court found the complaint was "deserving of further development and may proceed at this juncture" with respect to the plaintiff's allegation that the defendant poured human waste over plaintiff's cell and property. *Id.* Whether exposure to human waste is cruel and unusual depends on both the duration and the severity of the exposure. *Ramsey v. Fischer*, No. 14-CV-00147A(F), 2018 WL 1833018, at *15 (W.D.N.Y. Jan. 18, 2018). Either a short duration of extreme exposure or a prolonged period of less severe exposure may arise to an Eighth Amendment violation depending on the particular facts of the case. *Id.* (citing cases). In *Ramsey*, the plaintiff's

allegations of being confined for seven days in a cell with a mattress saturated with urine and stained with feces sufficiently stated an Eighth Amendment violation. *Id.* at *16.[18]

A lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment. *Windham v. California*, No. 2:20-cv-0773 TLN DB P, 2020 WL 5177531, at *2 (E.D. Cal. Aug. 31, 2020) (citing *Knop v. Johnson*, 667 F. Supp. 467, 480 (W.D. Mich. 1987) (violation of Eighth Amendment where prison staff does not provide inmates "necessary access to toilet facilities and a washbasin and thus subject them to a substantial risk of having to defecate or urinate in their room without the benefit of a flushable toilet or a washbasin.")).

Plaintiff has sufficiently alleged that Defendants' failure to provide him a shower after spraying him with pepper spray and requiring him to sit in human excrement and urine for four days was an unconstitutional deprivation of basic hygiene. Plaintiff has also sufficiently asserted that he suffered an injury as a result of that deprivation, in that he was required to sit in sweltering heat with the pepper spray burning his eyes, nose, and skin for two days because he could not wash it off. Again, the allegations in the Complaint concerning the PTS Defendants' practices and policies are sufficient to allege that those policies were the "moving force" behind the failure to provide basic hygiene claim. Plaintiff's allegations are sufficient alone to allege a constitutional violation for lack of basic hygiene and sanitation. Defendants' Motions will be denied on this issue.

---

[18] The plaintiff in *Nguyen* also alleged that the conditions of confinement within the transport van were unsanitary and dangerous, as prisoners were forced to eliminate bodily waste on the floor, in bottles, and on themselves because the officers would not take enough hygiene breaks and the van lacked adequate ventilation and air conditioning, resulting in extreme temperatures, *Nguyen*, 2019 WL 429678, at *5, and the court found he had sufficiently alleged a constitutional violation.

E. <u>Conclusion – Federal Claims</u>

For these reasons, the Motions will be granted: (i) as to Count I to the extent based on alleged violations of the Fourth and Eighth Amendments (as opposed to the Fourteenth Amendment *encompassing the protections of* the Eighth Amendment); (ii) as to Count I to the extent based on inadequate medical care, lack of seatbelts and reckless driving, and inadequate food in violation of the Fourteenth Amendment; and (iii) as to Count I and Count II to the extent based upon *respondeat superior*. The federal claims against the PTS Defendants survive, however, to the following extent: (i) Count I to the extent based on inadequate drinking water and lack of basic hygiene in violation of the Fourteenth Amendment (as opposed to the Fourth or Eighth Amendment); and (ii) Count II to the extent based on excessive force due to the use of pepper spray.

**STATE-LAW CLAIMS**

Plaintiff alleges state-law claims against the PTS Defendants for intentional infliction of emotional distress, vicarious liability for the acts of their employees, negligence and gross negligence, and negligent hiring and supervision of employees. The PTS Defendants have moved to dismiss only the claim for negligent hiring and supervision (Count VII). (Doc. No. 16 at 19).

Plaintiff has alleged (as an alternative to his constitutional claims, which assert intentional conduct) a negligence claim against the PTS Defendants, contending that they owed their passengers a duty to exercise reasonable and ordinary care in providing safe transport and humane conditions. Plaintiff claims that Defendants negligently breached that duty of care to the prisoners in their custody, including Plaintiff, through the various conditions and incidents described above, resulting in serious harms to the Plaintiff. He also alleges that the PTS Defendants failed adequately to screen their employees and/or failed adequately to supervise, train, monitor, or retain

those employees to ensure the safety and reasonable care of the prisoners in their custody. Plaintiff contends that the PTS Defendants knew or should have known of the common practices of their employees that breached the PTS Defendants' duties to passengers. (Doc. No. 1 at ¶¶ 97-104).

As with his negligence claim, Plaintiff's negligent hiring and supervision claim, obviously, alleges negligent conduct, and thus is an alternative to his federal constitutional claims, which allege *intentional* (mis)conduct.[19] In other words: (i) Plaintiff argues, for purposes of his federal claims, that the PTS Defendants *intentionally created* policies and practices that violated constitutional rights of prisoners; and alternatively, (ii) Plaintiff appears to argue, for purposes of his state-law claims, that the PTS Defendants *negligently allowed* such policies and practices to exist.

The parties dispute which state's substantive law should apply to Plaintiff's negligent hiring and supervision claim. "In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state." *Byars v. Dart Transit Co.*, 414 F. Supp. 3d 1082, 1088 (M.D. Tenn. 2019) (quoting *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir.1996)). Because Tennessee is the forum state, the Court will apply Tennessee choice-of-law rules.

Tennessee has adopted the "most significant relationship" test of the Restatement (Second) Conflict of Laws to choice-of-law questions for tort claims. *McClendon v. N. Carolina Mut. Life Ins. Co.*, 406 F. Supp. 3d 677, 683 (M.D. Tenn. 2019) (citing *Hataway v. McKinley*, 830 S. W. 2d 53, 59 (Tenn. 1992)). The most significant relationship is determined by examining: (1) the place

---

[19] Allegations of negligence are insufficient to entitle a Section 1983 plaintiff to relief. *Duckett v. Cumberland Cty. Sheriff Dep't,* No. 2:18-cv-00024, 2019 WL 1440635, at *5 (M.D. Tenn. Apr. 1, 2019).

of the alleged injury; (2) the place where the injurious conduct occurred; (3) the domicile and/or place of business of the parties involved; and (4) the place where the relationship of the parties is centered. *Id.* These factors are to be evaluated according to their relative importance to the issue presented. *Id.*; Restatement (Second) Conflict of Laws § 145. "[T]he law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009), *quoted in Kines v. Ford Motor Co.*, No. 1:19-CV-01054-JDB-jay, 2020 WL 5550396, at *2 (W.D. Tenn. Sept. 16, 2020).

Here, Plaintiff's alleged injuries were sustained over the course of his five-day journey from Nebraska to Ohio, so no one state is clearly the place where his injuries occurred. Similarly, the Complaint alleges injurious conduct occurring throughout the trip, over several days and several states. The Complaint also alleges that Plaintiff resides in Ohio, and the principal place of business is Whites Creek, Tennessee for Prisoner Transportation Services of America ("PTSA") and Prisoner Transportation Services, LLC ("PTSLLC"). The principal place of business for Brevard Extraditions d/b/a U.S. Prisoner Transport ("USPT") is Melbourne, Florida. The Complaint alleges that PTSLLC is the parent company of the other two Defendants, exercising common control and management of both PTSA and USPT, and PTSLLC, the "controlling" company, is headquartered in Tennessee.

The PTS Defendants argue that the place where the relationship of the parties is centered is Ohio, because Defendant Cuyahoga County, the "purchaser" of the services of the PTS Defendants, is a political subdivision of Ohio and Plaintiff resides there. Plaintiff, on the other hand, contends that Tennessee is the place where the conduct causing his injuries occurred, because the "moving forces" behind the injurious conduct and constitutional violations were the PTS Defendants' policies and practices put into place by PTSLLC, a company headquartered just

outside Nashville. (Doc. No. 30 at 12).[20] The PTS Defendants do not address this "policies and practices" basis for the choice-of-law analysis. Rather, they respond that Defendants' domicile is simply one of the factors to be considered under *Hataway*. (Doc. No. 31 at 5).

Plaintiff's argument about the policies and practices linking this case to Tennessee is an argument based upon intentional conduct, not negligent conduct. For the alleged policies and practices to have been "put into place" in Tennessee (at the PTS Defendants' headquarters), as Plaintiff contends, the PTS Defendants would have had to be intentional about those policies and practices. If they were simply negligent in not being aware of the unofficial policies and practices followed by their employees during transports around the country, that alleged negligence would not be limited to Tennessee.

This particular question of choice of law, like many others, is not very amenable to a "right" answer. The evaluation of the individual factors, and their relationship vis-à-vis one another, is subjective. The Court cannot declare its determination of the applicable substantive law indisputably correct. But it must make that determination. To do so, the Court calls it like sees it, making the soundest evaluation it knows how to make. Ultimately, the Court finds that, although the question is close, for choice-of-law purposes the relationship of the parties was centered in Ohio. Plaintiff resides there, Plaintiff was being transported there during the events at issue, and the PTS Defendants contracted with a political subdivision located there. The only connection to Tennessee is the "domicile" of PTSLLC and PTSA. The Court will, therefore, analyze Plaintiff's negligent hiring and supervision claim under Ohio substantive law.

---

[20] Plaintiff also argues that Tennessee has a great interest in the allegedly willful and/or negligent actions of its businesses that could result in injuries to passengers. (Doc. No. 30 at 12).

In Ohio, negligent hiring claims require proof of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring the employee was the proximate cause of the plaintiff's injuries. *Smith v. Dolgen Midwest, LLC*, No. 2:19-cv-4333, 2020 WL 6044087, at *3 (S.D. Ohio Oct. 13, 2020).

Under this rubric, it is also well established that the legal viability of the plaintiff's claims of negligent supervision is dependent upon a showing that the employee's conduct was foreseeable. The conduct was foreseeable to the employer only if it knew (or should have known) of the employee's propensity to engage in similar conduct. *Smith,* 2020 WL 6044087, at *3. In evaluating the foreseeability of an employee's conduct for a negligent hiring or supervision claim, the plaintiff must show that the employer knew or should have known of the employee's "propensity to engage in similar tortious or criminal conduct." *Sitton v. Massage Odyssey, LLC*, --- N.E.3d ---, 2020 WL 5240459, at *3 (Ohio Ct. App. 2020).

The PTS Defendants argue that Plaintiff's negligent hiring claim should be dismissed because Plaintiff alleges no facts at all about the circumstances of Mr. Guerra's (or, the Court notes, any other employee's) hiring. (Doc. No. 16 at 21-22). Plaintiff has alleged no facts to support a claim that, at the time of his hiring, the PTS Defendants knew or should have known of any "propensities" or incompetence of Mr. Guerra that would make it foreseeable that he would commit constitutional violations. Plaintiff argues that the PTS Defendants had notice of Guerra's "propensity" to cause the harm alleged because it was the company's policies and practices that encouraged or condoned his conduct. (Doc. No. 30 at 13). It appears that Plaintiff is attempting to "bootstrap" the argument that all employees the PTS Defendants hire must be treated as having a

propensity to engage in bad conduct because if they are hired, then the PTS Defendants will encourage or condone their bad behavior. But this claim centers around the time of the employee's *hiring*, and if Plaintiff is contending that the PTS Defendants' policies and practices were implemented negligently (as opposed to intentionally), he has failed to allege facts to support such a claim.

Plaintiff has failed to identify anything specific about the PTS Defendants' hiring of employees or about the information known about those employees at their time of hire. Although he asserts that discovery will shed more light on these facts, he has failed to make even bare non-conclusory factual allegations in this regard. Therefore, Plaintiff has failed adequately to allege a negligent hiring claim, and Defendants' Motions will be granted on this issue.[21] *See Iqbal*, 556 U.S. 662, 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Turning to Plaintiff's claim for negligent supervision, the Court must accept the allegations of Plaintiff's claim for negligence (Count VI) as true and, especially inasmuch as the PTS Defendants have not moved to dismiss that claim, the Court finds that it sufficiently alleges a claim for negligence by the PTS Defendants as to their employees' breaches of the duty of reasonable care. The Court also finds that Plaintiff has stated a claim for negligent supervision of those

---

[21] The Court would find the same result under Tennessee law. Under Tennessee law, a plaintiff may recover for negligent hiring or supervision of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness of the job. *McGuffey v. Belmont Weekday Sch.*, No. M2019-01413-COA-R3-CV, 2020 WL 2754896, at *18 (Tenn. Ct. App. May 27, 2020). Again, the Plaintiff has failed to allege facts to support such a claim.

employees. Given the alleged history of complaints, lawsuits, and investigations against the PTS Defendants (Doc. No. 1 at ¶ 46), Plaintiff has sufficiently alleged that the PTS Defendants knew or should have known of the alleged misconduct of their employees and negligently failed adequately to supervise those employees to avoid harm to their passengers.

Accordingly, Defendants' Motions will be granted as to Plaintiff's negligent hiring claim and denied as to Plaintiff's negligent supervision claim.

<u>**CONCLUSION**</u>

For these reasons, the Motions (Doc. Nos. 15 and 24) will be granted in part and denied in part. As to Plaintiff's federal claims (Counts One and Two), the following will be dismissed: (i) Count I to the extent based on alleged violations of the Fourth and Eighth Amendments; (ii) Count I to the extent based on alleged inadequate medical care, lack of seatbelts and reckless driving, and inadequate food in violation of the Fourteenth Amendment; and (iii) Count I and Count II to the extent based upon *respondeat superior*. Remaining is Count I to the extent based on Plaintiff's conditions of confinement allegedly in violation of the Fourteenth Amendment due to inadequate drinking water and lack of basic hygiene, and Count II to the extent based on based on alleged excessive force due to the use of pepper spray.

As to Plaintiff's state-law claims, Count VII will be dismissed to the extent it is based on negligent hiring of employees. Remaining are Plaintiff's claims for assault and battery (Count III), intentional infliction of emotional distress (Count IV), negligence/gross negligence (Count VI), and negligent supervision of employees (part of Count VII). As for Count V, styled as "vicarious liability," the Court notes that it is not an independent claim but rather a theory for holding the PTS Defendants liable under state law for tortious acts committed by their employees.

An appropriate Order shall be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE