IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANKLYN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00599 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| PRISONER TRANSPORTATION ) | |
| SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Cuyahoga County's Motion to Dismiss (Doc. No. 63, "the Motion"). Plaintiff filed a response to the Motion (Doc. No. 78) and Defendant Cuyahoga County ("the County") filed a reply (Doc. No. 83). For the reasons stated herein, the Motion will be granted.

### INTRODUCTION

This case arises from the five-day transport of Plaintiff Williams by Defendants Prisoner Transportation Services, Inc., PTS of America, LLC, and Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport (collectively, "PTS") from Omaha, Nebraska, to Cleveland, Ohio, in July 2018. During that transport, Plaintiff was an inmate in the custody of PTS and, at the time of filing this action, Plaintiff was an inmate in the custody of the Cuyahoga County Jail in Cleveland, Ohio. Defendant Cuyahoga County ("the County") contracted with PTS for the provision of extradition and prisoner transport services for Plaintiff from Nebraska to Ohio.

The Complaint alleges state-law torts and constitutional violations by PTS during its transport of Plaintiff. It also alleges that the County failed to take steps to ensure the safety of

Plaintiff while being transported, failed properly to vet PTS prior to hiring PTS, failed to supervise or monitor PTS's treatment of prisoners, failed to establish a policy or procedure for PTS to follow in transporting Plaintiff and other prisoners, failed to train PTS employees, and failed to review PTS' operations, all resulting in violation of Plaintiff's constitutional rights. (Count I, Doc. No. 1 at ¶¶ 61-63). In addition, the Complaint asserts a state-law claim against the County for negligent supervision and hiring. (Count VII, Doc. No. 1 at ¶¶ 107, 109-111). Plaintiff asserts that the County was aware of various lawsuits, investigations, and complaints regarding civil rights violations by PTS but nevertheless continued to use its services. (Doc. No. 1 at ¶¶ 47 and 60).

The Complaint alleges that the County is subject to the jurisdiction of this Court via its contractual relationship with PTS, which has its principal place of business in Whites Creek, Tennessee. The County, via the Motion, challenges such assertion of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## PERSONAL JURISDICTION

Rule 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. In deciding such a motion, the district court may rely upon affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. *Jackson Cty. Employees' Ret. Sys. v. Ghosn*, No. 3:18-cv-01368, 2020 WL 7711378, at *5 (M.D. Tenn. Dec. 29, 2020). Here, the Court will decide the Motion based upon the affidavits and arguments of the parties alone.

Where, as here, "a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Tennessee's long-arm statute, Tenn. Code Ann. § 20-

2

2-214, has been interpreted to be "coterminous with the limits on personal jurisdiction imposed by the Due Process Clause of the United States Constitution, and thus, the jurisdictional limits of Tennessee law and of federal constitutional due process are identical." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (internal quotation marks and citation omitted). Unlike for courts in some states, for a Tennessee court it is appropriate to collapse the two-part jurisdictional inquiry into one part, *i.e.*, the due-process inquiry. *EdgeAQ, LLC v. WTS Paradigm, LLC*, No. 3:14-CV-2264, 2015 WL 3453758, at *3 (M.D. Tenn. May 29, 2015).

Personal jurisdiction comes in two forms: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction allows a plaintiff to sue a defendant on all claims regardless of the connection between the claim and the forum. General jurisdiction requires that a plaintiff have continuous and systematic contacts with the state. *Tailgate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019). *Id.* For the Court to have general jurisdiction over a corporation, those continuous and systematic contacts must be such that a corporation is "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). The same rule presumably would, and apparently does, apply to counties. *See Garth v. Morgan Cty.*, No. 4:20-CV-749, 2020 WL 6076320, at *3 (S.D. Tex. Oct. 14, 2020).

In contrast, specific jurisdiction must arise out of or relate to the defendant's contacts with the forum—principally an activity or occurrence that takes place in the forum state. *Bristol-Myers*, 137 S. Ct. at 1780. Under the constitutional due process analysis, for specific jurisdiction to exist: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant

3

reasonable. *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

A plaintiff bears the burden of establishing personal jurisdiction. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC,* No. 3-19-cv-00469, 2020 WL 5877131, at *1 (M.D. Tenn. Oct. 2, 2020) (citing *Elcan v. FP Assocs. LTD,* Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020)). On a personal-jurisdiction motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing. *Id*. Where, as here, the court rules without conducting an evidentiary hearing, the plaintiff's burden of proof is "relatively slight." *Id*.

When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Id. at *2; Elcan,* 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.; CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996), *cited in Elcan*, 2020 WL 2769993, at *3. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff...alleges collectively fail to state a *prima facie* case for jurisdiction." *Id*. "In this procedural posture [without an evidentiary hearing], the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions." *Camps v. Gore Capital, LLC,* No. 3:17-cv-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019). Because there has been no evidentiary hearing with regard to the County's Motion, the Court will determine whether Plaintiff has demonstrated personal jurisdiction over the County under a *prima facie* standard, rather than the heavier preponderance of the evidence standard. *Camps*, 2019 WL 2763902, at **4-5; *JRS Partners,*

4

2020 WL 5877131, at *2. " 'A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction.' " *Reyes v. Freedom Smokes, Inc*., No. 5:19-CV-2695, 2020 WL 1677480, at *2 (N.D. Ohio Apr. 6, 2020) (quoting *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148, at *2 (W.D. Wash. Dec. 13, 2018)).

## ANALYSIS

Plaintiff does not argue that this Court has general jurisdiction over the County.[1] Instead, he contends that he has met the requirements to show that the County purposefully availed itself of the privilege of acting in Tennessee, the cause of action arose from the County's activities here, and the acts or consequences caused by the County had a sufficiently substantial connection to Tennessee to make the exercise of jurisdiction here reasonable. (Doc. No. 78 at 2-6).

The County contends that Plaintiff cannot show that it ever "purposefully availed" itself of the privilege of acting in Tennessee. The mere fact that the County entered into a contract with a Tennessee corporation does not mean that the County purposefully availed itself of the "benefits and protections" of Tennessee law. A party's contract with an out-of-state party alone cannot automatically establish minimum contacts. *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 151 (6th Cir. 1997).[2]

---

[1] Plaintiff was prudent to forego any such argument, which was doomed to failure. It is hard to see how an Ohio county (government) could be considered essentially at home in Middle Tennessee. *See Garth v. Morgan Cty*., No. 4:20-CV-749, 2020 WL 6076320, at *3 (S.D. Tex. Oct. 14, 2020) (noting that the plaintiff had "not alleged any affiliations of Morgan County [in Alabama] with the State of Texas, much less any 'affiliations with [Texas] that are so continuous and systematic' as to render the County 'essentially at home in' Texas.").

[2] "In *Kerry Steel Inc. v. Paragon Industries, Inc*., 106 F.3d 147, 151 (6th Cir. 1997), we held that an out-of-state defendant-buyer did not purposefully avail itself of the benefits and protections of the forum state's laws because, in part, no facts connected the subject matter or performance of the contract at issue to the forum state." *Cal-Tenn Fin., LLC v. Scope Auto., LLC*, No. 3:18-cv-01347, 2019 WL 1282950, at *10 (M.D. Tenn. Mar. 20, 2019) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–23 (6th Cir. 2000)).

Plaintiff has alleged no facts connecting either the subject matter of the contract or its performance to the State of Tennessee. *See id.*

The County is a political subdivision located in Northeast Ohio, with no presence or place of business in the State of Tennessee. (Doc. No. 63-1). The County Prosecutor's Office, in conjunction with the County Sheriff's Department, arranges for the extradition of prisoners to the County. (Doc. No. 63-2). The County uses its Sheriff's Department, the U.S. Marshals' Service, and PTS for extradition of prisoners. (*Id.*). The County does not have an ongoing or standing (or "master") contract with PTS or any of its affiliates. (Doc. No. 63-1). Rather, if and when it is necessary to use PTS, the Warrant Unit of the County Sheriff's Department logs onto PTS' website and submits a request for a prisoner transport through a portal on that site. (Doc. No. 63-3). An employee in the Warrant Unit of the County Sheriff's Department may have follow-up emails or telephone conversations with PTS representatives, depending on the nature of the transport. (*Id.*) Once the PTS transport is finished, PTS sends an invoice to the County for payment. (Doc. Nos. 63-1 and 63-2).

In 2018, the County contacted PTS to transport Plaintiff from Omaha, Nebraska, to Cleveland, Ohio, where he was placed in the custody of the County Jail. (Doc. No. 1). All of the alleged mistreatment occurred during that transport, prior to Plaintiff's arriving at the County Jail. (*Id.*) In addition, none of the alleged mistreatment occurred in the State of Tennessee. (*Id.*). Although Plaintiff contends that the County had a longstanding or repeated business relationship with PTS of America, a Tennessee corporation, he has failed to show any connection between the State of Tennessee and PTS's services for which the County contracted. The County contracted with PTS for prisoners to be delivered to Ohio, not Tennessee; likewise, there is nothing in the record (or even alleged) to suggest that the County contracted to pick up prisoners in Tennessee for delivery to Ohio. And PTS' services to the County were completed and payment became due when Plaintiff was delivered to the County Jail in Ohio.

There is no indication that the County's decision to contract with PTS resulted from PTS in Tennessee; indeed, it appears the County would have made its requests to PTS wherever it was physically located, since the requests were made online. This contact with Tennessee, solely because PTS chose to be located there, is the type of contact that was characterized as "random, fortuitous, or attenuated" by the Supreme Court in *Burger King Corp. v. Rudzewicz,* 475 (1985). Similarly, the fact that payment was remitted by the County to PTS at a Tennessee address does not alone indicate that the County purposefully availed itself of acting in Tennessee. The County has not deliberately engaged in significant activities within the State of Tennessee or created continuing obligations between itself and residents of this forum. *See id.* at 475-76.

Moreover, Plaintiff's claims against the County do not arise out of any of the County's alleged activities in the State of Tennessee. The County contacted PTS via an online request and later paid an invoice after Plaintiff was delivered to the County Jail. The County did not hire PTS to perform a service in Tennessee; likewise, there is nothing in the record (or even alleged) to suggest that PTS actually performed any services in Tennessee, including any passage through Tennessee in route from Nebraska to Ohio. neither did PTS perform any services related to Plaintiff in Tennessee. Plaintiff's claims arise from actions, omissions, and alleged misconduct that occurred on his trip from Nebraska to Ohio and from the County's alleged decisions made in Ohio.

Finally, it would be unreasonable for the Court to exercise personal jurisdiction over the County in this case. When a plaintiff meets the first two prongs for specific jurisdiction, "there is an inference that the reasonableness prong is satisfied as well." *Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. 2:20-CV-02282-TLP-tmp, 2020 WL 6121948, at *5 (W.D. Tenn. Oct. 16, 2020) (citing *Intera Corp.*, 428 F.3d at 618)). Generally, in determining whether the exercise of jurisdiction is reasonable, a court should consider these factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the other

states' interest in securing the most efficient resolution of the controversy. *Id.; see also Sompo Am. Ins. Co. v. FCA US LLC,* No. 20-10734, 2021 WL 872092, at *8 (E.D. Mich. Mar. 9, 2021).

Here, the burden on the County of providing a defense of this lawsuit in Tennessee, at taxpayer expense, is significant. The County not only has to hire local counsel, but also has to send a representative to Tennessee for any hearings, depositions, or trial, to represent the County in the litigation. The County does not have a substantial connection to Tennessee.[3] Nothing about the acts of the County or consequences of those acts have a connection to Tennessee. If Plaintiff's allegations of mistreatment are true, then the consequences of any decision by the County (in Ohio) to hire PTS to transport Plaintiff were incurred on the trip from Nebraska to Ohio, not in Tennessee. As the Supreme Court has stated, "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction." *Burger King*, 471 U.S. at 477-78. Thus, Court finds the burden to the County of trying this action here is significant.[4]

---

[3] Plaintiff erroneously refers to this Court as the "Eastern District" of Tennessee. (Doc. No. 78 at 5-6).

[4] In so ruling, the Court does not rely on arguments (or at least observations) made by the County concerning the advantages it would enjoy under Ohio law. As the County notes, in both Ohio and Tennessee, counties are protected by immunities when engaged in governmental or proprietary functions, with some exceptions. Ohio Rev. Code §§ 2744.01, *et seq.* and Tenn. Code Ann. § 29-20-201. (Doc. No. 64 at 9, 12). Tennessee law limits that immunity, however, to "'any political subdivision of the state of Tennessee.'" (*Id*. at 9) *(*quoting Tenn, Code Ann. § 29-20-102(3)(A)). As Defendant further notes, Ohio law also provides limitations on the amount of damages a plaintiff may recover against the County, Ohio Rev. Code § 2744.05, but Tennessee law provides no such protection for an Ohio county. (*Id.* at 12). As Defendants note, unless the Court at some point determined that Ohio law applied in this case, the County would lose the protections its own state law affords to counties.
     But these observations do not advance Defendants' position on the Motion. Even if it found that it had personal jurisdiction over the County, the Court could also find that Ohio law applied to the County in this case and find that the protections afforded by Ohio law would be available to the County here. These questions of which state's law governs are totally independent of the questions of jurisdiction; jurisdiction is one issue, and choice of law is another. Thus, the observations about Ohio law's protections for the County are not probative as to jurisdiction.

8

Moreover, Plaintiff has not identified any interest of the State of Tennessee in this matter against an Ohio county. Plaintiff is not a resident of Tennessee and, so far as the Court has been made aware, has no ties to Tennessee. Nor is there, as far as the Court is aware, any connection between Tennessee and whatever circumstances (or alleged circumstances) landed Plaintiff in the custody of the County that resulted in his transport by PTS. The Court finds that the interest of Tennessee in litigating Plaintiff's claims against the County is small. In addition, the interest of Ohio in having litigation against one of its political subdivisions tried in Ohio is great. Without a doubt, Ohio has an interest in the solvency and financial stability of its political subdivisions and in the protections afforded its counties under Ohio law. Moreover, the alleged "misconduct" of the County in failing to vet, monitor, or supervise PTS did not occur in Tennessee; rather, those decisions were made in Ohio by County officials.

Finally, Plaintiff's interest in obtaining relief would not be precluded by the Court's dismissing his claims against the County in this forum. Plaintiff has identified nothing that would prohibit him from suing the County in Ohio, other than the prospect of having two lawsuits simultaneously litigated with the associated extra expense and inconvenience to the parties. Expense and inconvenience to the parties alone, however, is not sufficient to give this Court personal jurisdiction over the County when it does not exist.

For these reasons, the Motion will be granted, and Plaintiff's claims against the County will be dismissed without prejudice, for lack of personal jurisdiction.

Plaintiff has asked that *if* the Court finds that the Motion should be granted, then it should be entitled to additional discovery. But that is not how the Court works. If Plaintiff needed additional discovery in order fully to respond to the Motion, he should have requested it before (and asked to receive it before) he filed his response—instead of stating that *if* he did not prevail

on the Motion, *then* he would like additional discovery. The Court will not give Plaintiff a preliminary ruling and then allow him to take additional discovery to overcome that ruling.

## CONCLUSION

Even under the lenient standard that applies to motions to dismiss under Rule 12(b)(2) decided without an evidentiary hearing, it is clear that Plaintiff has failed to make an adequate showing that this Court has personal jurisdiction over the County. Therefore, the County's Motion to Dismiss (Doc. No. 63) will be granted, and Plaintiff's claims against the County will be dismissed without prejudice.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE